UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Naomi Marler, ) | Civil Action No.: 6:19-cv-0565-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Andrew M. Saul, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Naomi Marler seeks judicial review, pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends that the Commissioner's Decision be affirmed. [ECF No. 16]. Plaintiff filed objections to this recommendation, and the Commissioner filed a reply. [ECF No. 18; ECF No. 19]. This Court now issues the following Order.

**Factual Findings and Procedural History**

Naomi Marler filed an application for DIB on March 3, 2015, alleging she became disabled on July 31, 2013. The R&R adequately summarizes Marler's medical history as provided for in the record. Briefly stated, in 2013 Marler was evaluated by Dr. Stephen Harley for low back pain that radiated down to her foot. While a lumbar MRI was negative at the time, Dr. Harley diagnosed her with neck and back pain. Dr. Harley recommended weight loss, physical therapy and chiropractic treatment. [Tr.

at 298-305]. She was also treated by Dr. Michael Tanbonliong for multiple issues, including lumbar spine pain, numbness and tingling. Medical notes from this time indicate she suffered from anxiety and depression. [Tr. at 312-316; 383]. On January 26, 2015, neurologist Dr. Carol Kooistra, treated Marler for difficulties related to the left side of her body. Dr. Kooistra noted pain and numbness and diagnosed paresthesia, urinary incontinence, sacroiliac pain, and spells. Marler had a brain MRI in 2015 which showed a three centimeter intra-axial mass in the inferior right frontoparietal junction. She also had an MRI of her lumbar spine and cervical spine, which showed a small protrusion at C5-C6 with mild narrowing of the left half of the spinal canal. A few days later, Dr. Kooistra evaluated Marler as having a three centimeter arteriovenous malformation ("AVM"). [Tr. at 354-366].

On March 26, 2015, a physical residual functional capacity assessment was performed by Dr. Dale Van Slooten. He found she was capable of performing sedentary work. [Tr. at 79-80]. This assessment was echoed by another non-examining consultant, Dr. Hurley Knott, in December of 2015. In May of 2015, Dr. Bruce Kofoed performed a consultative examination. Dr. Kofoed diagnosed Marler with depressive disorder, social anxiety, AVM, focal seizures and chronic pain. [Tr. at 385-388]. Dr. Silvie Kendall, another non-examining consultant, noted that Marler's mental impairments caused mild and moderate limitations. [Tr. at 77-82]. Marler continued to be treated by Dr. Kooistra for her brain lesions. She was treated by Dr. Brian Thompson in December of 2016 for epilepsy. In 2017, Dr. Thompson indicated that Marler's MRI revealed her brain lesions were stable. [Tr. at 503-511]. Marler continued to be treated for her mental impairments during this time.

After Marler's application was denied initially and on reconsideration, Marler requested a hearing. On December 7, 2017, both Marler and an impartial vocational expert ("VE") were present for

a hearing. The ALJ gave Marler an unfavorable decision on February 28, 2018, finding Marler was not disabled as provided for in the Social Security Act. Specifically, the ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> (2) The claimant has not engaged in substantial gainful activity since July 31, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*)
>
> (3) The claimant has the following severe impairments: arteriovenous malformation; partial symptomatic epilepsy; obesity; mild degenerative disc disease of the thoracic spine; bipolar/depressive disorder; and anxiety (20 CFR 404.1520©).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except with the following limitations: never balance or climb ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, crawling, and climbing ramps or stairs; avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery; can perform simple, routine tasks for two hour blocks of time with normal rest breaks during an eight hour work day; and can have occasional interaction with the general public.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on October 24, 1976 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"

>whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
>(11) The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2013, through the date of this decision (20 CFR 404.1520(g)).

[ECF No. 9-2, pp. 21-32]. Marler requested a review of this decision. On January 11, 2019, The Appeals Council informed Marler that it had denied her request for review of the ALJ's decision. On February 26, 2019, Marler filed this Complaint seeking judicial review of the Commissioner's decision. [ECF No. 1]. Both Marler and the Commissioner filed briefs [ECF No. 12; ECF No. 13; ECF No. 14], and the Magistrate Judge issued a Report and Recommendation ("R&R") on February 12, 2020, recommending that the Commissioner's Decision be affirmed. [ECF No. 16]. On February 26, 2020, Marler filed objections. [ECF No. 18]. The Commissioner replied to these objections on March 10, 2020. [ECF No. 19].

**Standard of Review**

I.     **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

4

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II.   The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44,

47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## Applicable Law

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566,

6

416.960(a), 416.963, 416.964, 416.965, & 416.966.  If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors.  *Id.* §§ 404.1560(c)(1) & 416.960(c)(1).  Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents her from doing substantial gainful activity.  *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

7

Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### Analysis

Marler objects to the finding by the Magistrate Judge that the decision of the Commissioner should be affirmed because she believes the RFC does not adequately account for her limitations. Specifically, she argues that the ALJ improperly discredited her subjective allegations of pain. Further, Marler objects to the finding that the ALJ adequately assessed her neurological condition, AVM, in failing to consider opinion evidence provided by Dr. Kooistra. The Commissioner argues substantial evidence supports the ALJ's decision.

In evaluating a claimant's RFC, the ALJ must consider all relevant medical and other evidence of record. 20 CFR § 404.1545(a). As is pertinent here, SSR 96-8p provides that an ALJ must include within the RFC assessment a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with medical and other evidence. Further, the RFC assessment must always consider and address medical source opinions. SSR 96-8p. Marler argues that the ALJ did not properly account for her subjective complaints of pain associated with AVM (arteriovenous malformation). Under SSR 16-3p, the regulations require a two-step process for evaluating an individual's symptoms. First, there must be a determination of whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. Second, there must be an evaluation of the intensity and persistence of any individual's symptoms, such as pain and determine the extent to which these symptoms limit an individual's ability to perform work-related activities. Marler first argues that while the ALJ noted normal and stable findings in her MRI, Dr. Kooistra's opinion that the AVM was the source of her pain and numbness bolstered her testimony regarding her subjective symptoms. Second, Marler argues that the ALJ's general conclusion that Marler's physical examinations showing normal findings, suggesting she had a greater capacity to work than alleged, reveal that the ALJ was improperly requiring objective evidence of pain. Marler further argues that the reference to Marler's daily activities made by the ALJ do not show that he properly considered her AVM limitations.

Here, Marler argues that the ALJ did not factor in Dr. Kooistra's assessment regarding the source of her pain. In reviewing the decision, it is clear that the ALJ found that Marler suffered from severe AVM and accounted for her issues with AVM to the extent the ALJ found support for this limitation within the record. While Marler argues that the ALJ did not adequately consider her pain

9

attributable to her AVM impairment, this Court disagrees. First, the ALJ explained that while Marler did indeed suffer from this impairment, as well other impairments, the objective evidence within her medical records, as well as her own testimony regarding what activities she could perform on a daily basis, did not necessitate a greater RFC than provided for in the decision. The ALJ found that the majority of the evidence did not support a finding of any greater limitations than were provided for in the RFC. Second, the ALJ found Marler's allegations of pain credible, but he did not find evidence to support a finding that she experienced these symptoms to such a degree that would dictate a finding of disability. The ALJ is required to explain his RFC findings, which he has adequately done in this case. The ALJ gave due consideration to her allegations of pain; however, he determined that while Marler likely was experiencing some pain, based on the other evidence (including her other testimony regarding daily activities, physician opinions, and her longitudinal medical record), her pain was not as debilitating as alleged. His determination included specific reasons as to how he evaluated her symptoms in relation to the overall medical record, and why he found that, even considering her allegations of pain associated with AVM, she could still perform the RFC as defined in the decision. These reasons included an assessment of her daily activities, her testimony regarding the duration of her pain, factors that attributed to her pain, as well as what her records and objective testing showed. *See* 20 C.F.R. § 404.1529©. Finally, the ALJ did consider Dr. Kooistra's examinations and notes within the record, as well as he gave consideration to the relatively normal examinations of her other physicians. After reviewing the ALJ's decision as a whole, it is clear that he considered the entirety of the medical evidence within the record before assessing claimant's subjective symptoms, provided adequate explanation for the RFC determination, and substantial evidence supports his decision with respect to the RFC.

As discussed above, Marler relatedly argues that the ALJ did not properly consider the opinion of Dr. Kooistra regarding Marler's AVM, while also arguing that Dr. Kooistra's "opinion" regarding disability was not properly evaluated. She argues that Dr. Kooistra's notation in the medical record that Marler applied for disability which "appears reasonable at this time" should have been treated as an opinion by Dr. Kooistra of Marler being disabled. As explained by the Commissioner, this was a notation made by Dr. Kooistra during a doctor's visit regarding information provided to the physician by Marler. However, even were it to be construed as an opinion, first, as explained by the Magistrate Judge, a finding of disability is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d). Dr. Kooistra provides no other additional information within those notes regarding functional limitations related to such a finding, nor is there any clarifying information to support this observation or opinion, to the extent that is what Dr. Kooistra meant to opine. Even were this Court to construe this an opinion that the ALJ should have weighed, the regulations direct an ALJ not to afford any "special significance" to an issue reserved for the Commissioner. Dr. Kooistra's comment is included within the subjective notes of her follow-up visit. At best, it is a comment by Dr. Kooistra that at the time of the visit, in December of 2015, it appeared reasonable for Marler to file for disability. However, Kooistra's opinion, to the extent it is one, did not provide any additional analysis or explanation. Even so, the ALJ clearly considered Dr. Kooistra's medical records, including this follow up visit in December of 2015 wherein this opinion or observation by Dr. Kooistra is found. [ECF #9-2, p. 28]. After reviewing the records at issue, this Court finds that the ALJ adequately considered Dr. Kooistra's medical evidence of record, and to the extent that the ALJ should have expressly weighed this opinion and explained that this observation is an issue reserved for the Commissioner, this Court agrees with the Magistrate Judge that it constitutes harmless error. Finally, a review of the opinion shows that the ALJ detailed Marler's

medical history and provided sound reasoning for deciding that she was not disabled under the Act. Accordingly, this Court finds that the ALJ's decision is supported by substantial evidence. Marler's objections regarding the improper RFC analysis are overruled.

## Conclusion

The Court has thoroughly considered the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections, and the applicable law. For the above reasons, the Court adopts the Magistrate Judge's recommendation [ECF No. 16]. The Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina
May 4, 2020

s/ R. Bryan Harwell
R. Bryan Harwell
Chief United States District Judge